UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

MARIA T. DeANGELIS,

**MEMORANDUM & ORDER**

**06-CV-1967 (NGG)**

Plaintiff,

-against-

**FILED**
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y
★ MAR 3 1 2010 ★

P.M.
TIME A.M.

AMERICAN AIRLINES, INC. and
ONESOURCE HOLDINGS, INC.,

Defendants.
-------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Maria T. DeAngelis ("Plaintiff" or "DeAngelis") brings this personal injury

action against Defendants American Airlines, Inc. ("American Airlines") and OneSource

Holdings, Inc. ("OneSource") for damages arising from a slip-and-fall accident in the American

Airlines terminal at John F. Kennedy International Airport ("JFK"). (See Compl. (Docket Entry

# 1).) Plaintiff alleges that Defendants negligently created or failed to remedy a dangerous

accumulation of water on which she slipped and fell. (Compl. ¶ 25-28.) Defendants move for

summary judgment under Federal Rule of Civil Procedure 56. For the reasons set forth below,

Defendants' motion is granted in part and denied in part.

## I.    PROCEDURAL BACKGROUND

Defendants filed a joint motion for summary judgment on September 13, 2007. (Docket

Entry # 22.) On March 31, 2008, the court stayed Defendants' motion so that Plaintiff could

submit a statement of facts in accordance with Local Rule 56.1. On June 2, 2008, Plaintiff filed

her Rule 56.1 Statement. (Docket Entry # 30). On November 6, 2009, the court issued a

Memorandum and Order questioning whether it had subject-matter jurisdiction over this case.

The Memorandum identified conflicting statements in the record regarding OneSource Holdings' state of incorporation and whether OneSource Holdings or OneSource Facility Services was the proper Defendant in this action.[1] (Docket Entry # 31.) The court directed the parties to submit supplemental briefing on subject matter jurisdiction.

On March 26, 2010, the court issued an Order to Show Cause directing the parties to appear at a status conference to address an apparent attorney conflict arising from Lester Schwab Katz & Dwyer LLP's ("Lester Schwab") joint representation of Defendants. (Docket Entry # 33.) In its Order, the court also concluded that it has subject-matter jurisdiction over this action under 28 U.S.C. § 1332 based on Defendants' submission that OneSource is diverse from DeAngelis.

Pursuant to its Order to Show Cause, the court held a status conference on March 30, 2010, at which David H. Motola of Lester Schwab addressed his firm's apparent conflict of interest. Motola represented to the court that OneSource had agreed to fully indemnify American Airlines, such that Defendants have common interests in the outcome of this case. Motola also stated that American Airlines should have withdrawn its cross-claims against OneSource to avoid the appearance of a conflict. Motola represented that American Airlines would submit an affidavit confirming its indemnification agreement with OneSource and withdrawing its cross-claims.

---

[1] The court notes that there is no evidence in the record linking OneSource Holdings, Inc. to DeAngelis's claim. The Services Agreement, discussed infra, is between American Airlines and an entity called OneSource Facility Services. OneSource Holdings has, however, indicated to the court that there is no functional difference between the two entities and has defended this litigation accordingly. As such, OneSource Holdings would be estopped from denying liability based on any distinction between it and OneSource Facilities. See Deligiannis v. Pepsico, Inc., 757 F. Supp. 241, 256 (S.D.N.Y. 1991).

## II.   BACKGROUND

### A.   Circumstances of Plaintiff's Injury

DeAngelis arrived at American Airlines' JFK terminal at approximately 5:00 a.m. on January 27, 2005. (Pl. Dep., Motion for Summary Judgment (Docket Entry # 22), Ex. E. 45.) Upon entering the terminal, DeAngelis ascended a staircase to reach her workplace at Sbarro restaurant. (Id. at 50.) She did not have any difficulty walking up the staircase, nor did she notice a wet condition on the staircase. (Id. at 52.) At approximately 6:30 a.m., DeAngelis left her workplace to pick up baked goods at another Sbarro restaurant in a different terminal. (Id. at 55.) On her way there, DeAngelis descended the same staircase. (Id. at 56.) Again, she did not have any difficulty walking down the staircase and she did not notice a wet condition on the steps. (Id.)

At approximately 6:40 a.m., DeAngelis arrived at the second Sbarro restaurant. (Id. at 59.) She retrieved a package of baked goods and left to return to her workplace. (Id. at 62.) She returned via the same route that she took to get to the second Sbarro restaurant. When DeAngelis was about ten steps up the staircase, she slipped, fell, and injured herself. (Id. at 63.) DeAngelis testified that she saw water on the staircase after she fell and that the staircase appeared to have been recently washed. (Id. 71-73.) She had not noticed any water on the staircase before she fell. (Id. at 64.)

DeAngelis's manager Faruk Khan arrived at the staircase soon after DeAngelis slipped and fell. (Khan Dep., Motion for Summary Judgment, Ex. H, 28.) According to Khan, the entire staircase was wet and appeared to have been recently mopped. (Id. at 32-34.) In his sworn affidavit, Khan stated that he observed a "cleaning person" with a mop and bucket a short distance from the staircase. (Khan Aff., Motion for Summary Judgment, Ex. K ¶ 9.) In his

3

deposition, by contrast, Khan testified that he saw two individuals mopping the floor near the staircase. (Khan Dep. 34.) Khan initially testified that these individuals were 20-30 feet from the staircase and later stated that they were 30-40 feet away from the staircase. (Id. at 34, 56.) Khan was unable to identify the individuals or the uniforms that they were wearing. (Id. at 36-37.) According to Khan, no warning signs were posted near the staircase where DeAngelis slipped and fell. (Khan Aff. ¶ 10.) Khan also testified that the airport was crowded when he arrived at the staircase. (Khan Dep. at 35.)

**B.    The Contract Between OneSource and American Airlines**

On May 1, 2001, OneSource entered into a Services Agreement with American Airlines. (See Services Agreement, Motion for Summary Judgment, Ex. J.) OneSource's responsibilities under the Service Agreement include, inter alia, "general duty cleaning" at night, "policing" of the terminal throughout the day, clearing outdoor areas surrounding the terminal, and replenishing bathrooms. (Service Agreement, Attachment 1.B.) The Service Agreement exhaustively sets forth these responsibilities in several appended exhibits. (See Service Agreement, Attachment 1.C; 1.D.) The Service Agreement does not, however, confer any general obligation on OneSource to maintain the safety of American Airlines' terminal or to ensure that equipment inside the terminal functions safely. According to Donald Smith, American Airlines' Manager of Facilities Maintenance for its JFK terminal, his staff oversaw the terminal's maintenance and repairs, including the operating systems within the terminal and the terminal's structure itself. (Smith Dep., Motion for Summary Judgment, Ex. F, 5-6.)

**C.    General Cleaning Practices**

Smith testified that, as a general matter, OneSource employees swept and mopped the terminal's staircases between 10:00 p.m. and 6:30 a.m. (Smith Dep. 12-13.) Gonzalo Beltran,

4

OneSource's Project Manager at JFK, testified that his staff usually cleaned the staircases between 2:00 and 3:00 a.m. (Beltran Dep., Motion for Summary Judgment, Ex. G, 8-10.) Both Smith and Beltran also testified that OneSource employees generally posted warning signs indicating that floors were wet from cleaning. (Smith Dep. at 14; Beltran Dep. at 7-8.)

According to Beltran, OneSource employees periodically inspected the terminal every morning beginning at 5:30. (Beltran Dep. at 18.) And, approximately every fifteen minutes, a OneSource employee checked the condition of the staircase on which DeAngelis slipped. (Id. at 19-20.) Smith also testified that, as part of his duties, he periodically inspected the terminal and addressed any issues that he encountered. (Smith Dep. at 17-19.)

## III.    DISCUSSION

### A.    Standard for Summary Judgment

A motion for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if its existence or non-existence "might affect the outcome of the suit under the governing law," and an issue of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the [non-moving] party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, "the court must draw all reasonable inferences in favor of the nonmoving party." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 149 (2000).

Rule 56(c) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S.

5

317, 322 (1986). In such a situation, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. A grant of summary judgment is proper "when no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight." Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1224 (2d Cir. 1994).[2]

## B. Elements of a Tort Claim

DeAngelis asserts common-law negligence claims against both OneSource and American Airlines. (Compl. ¶ 28.) Because this is diversity case, the court applies New York substantive law. See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). "To establish a prima facie case of negligence under New York law, 'a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom.'" Lerner v. Fleet Bank, N.A., 459 F.3d 273, 286 (2d Cir. 2006) (quoting Solomon ex rel. Solomon v. City of New York, 66 N.Y.2d 1026, 1027 (1985)).

An alleged tortfeasor can only be liable for negligence if it owed a duty to the injured plaintiff. See Espinal v. Melville Snow Contractors, Inc., 98 N.Y.2d 136, 138 (2002). The existence and scope of a duty is generally a matter of law for the court to decide. Id. To establish breach of duty in a slip-and-fall case, a plaintiff must show that the "defendant created the condition which caused the accident or that the defendant had actual or constructive notice of the condition." Hartley v. Waldbaum, Inc., 69 A.D.3d 902, 903 (2d Dep't 2010). Whether a defendant created or had notice of a hazardous condition is a question of fact. See id.; Palka v.

---

[2] New York law applies a different standard for summary judgment in slip-and-fall cases. See DeFalco v. BJ's Wholesale Club, Inc., 38 A.D.3d 824, 285 (2d Dep't 2007). The federal standard controls here "because what burdens each party bears on summary judgment is a procedural rather than substantive matter." Mona Cousin v. White Castle System, Inc., No. 06-CV-6335 (JMA), 2009 WL 1955555, at *4 n.2 (E.D.N.Y. July 6, 2009) (citing Tingling v. Great Atl. & Pac. Tea Co., No. 02-CV-4196, 2003 WL 22973452 at *2 n.2 (S.D.N.Y. Dec. 17, 2003) and Celotex, 477 U.S. at 325.

Servicemaster Mgmt. v. Servs. Corp., 83 N.Y.2d 579, 585-86 (1994) (noting that forseeability and causation are issues for the finder of fact).

Defendants OneSource and American Airlines are differently situated. As a result, they owed different duties to DeAngelis. The court considers DeAngelis's claim against each Defendant separately.

### C.    DeAngelis's Claim Against OneSource

OneSource undertook, by contract, to provide specified janitorial services in American Airline's JFK terminal, including cleaning the staircase on which DeAngelis slipped and fell. As a general rule, contractual obligations, by themselves, do not create a duty of care in favor of non-contracting parties under New York law. Espinal, 98 N.Y.2d at 140. There are, however, three limited exceptions: (1) where the contracting party, in failing to exercise reasonable care in the performance of his duties, launches a force or instrument of harm; (2) where the plaintiff detrimentally relies on the continued performance of the contracting party's duties; and (3) where the contracting party has entirely displaced the other party's duty to maintain the premises safely." Id. If none of these three exceptions apply, OneSource owed no duty to DeAngelis and cannot be liable in tort for her injuries.

OneSource owed no duty to DeAngelis under Espinal's second and third exceptions. The second exception only applies when "performance of contractual obligations has induced detrimental reliance on continued performance and the defendant's failure to perform those obligations positively or actively works an injury upon the plaintiff." Id. (internal quotation marks omitted). Plaintiffs cannot detrimentally rely on contracts that they do not know about. See Occhino v. Citigroup Inc., No. 03-CV-5259 (CPS), 2005 WL 2076588, at *7 (E.D.N.Y.

Aug. 26, 2005). In this case, there is no evidence that DeAngelis knew about OneSource's contract with American Airlines or that she relied on OneSource's performance of that contract.

OneSource also owed no duty to DeAngelis under Espinal's third exception. A contractor assumes a tort law duty under this exception when it undertakes "a comprehensive and exclusive property maintenance obligation which the parties could have reasonably expected to displace [the property owner's duty] to maintain the property safely." Riekers v. Gold Coast Plaza, 255 A.D.2d 373, 374 (2d Dep't 1998). To be comprehensive and exclusive, the contract must make the contractor the "sole privatized provider for a safe and clean . . . premises." Espinal, 98 N.Y.2d at 140. Here, neither OneSource nor American Airlines could have reasonably expected that OneSource's janitorial obligations would displace totally American Airlines' duty to maintain its terminal in a safe condition.

Nor did American Airlines operate as if OneSource had displaced its maintenance obligation. American Airlines' facility manager for its JFK terminals, Donald Smith, testified that he "managed a department that was responsible for all maintenance and repairs of all the operating systems" within the terminal, including the structure itself. (Smith Dep. 5-6.) According to Smith, OneSource's responsibilities were limited to providing janitorial services. (Id.) Accordingly, OneSource's cleaning responsibilities were neither comprehensive nor exclusive such that they displaced American Airlines' maintenance obligations. See Doona v. OneSource Holdings, Inc., — F. Supp. 2d —, 2010 WL 88050, at *16 (E.D.N.Y. 2010) (holding that the exact contract at issue in this case did not meet Espinal's "comprehensive and exclusive" standard).

Thus, OneSource could only have owed a duty to DeAngelis if "in failing to exercise reasonable care in the performance of [its] duties, [it] launche[d] a force or instrument of harm."

8

Espinal, 98 N.Y.2d at 140. With some circularity, this formulation imposes a legal duty on a contractor who breaches a duty of reasonable care by "negligently creat[ing] or exacerbat[ing] a dangerous condition."[3] Id.; see Doona, 2010 WL 88050, at *7 (noting that this standard "paradoxically" conditions a contractor's duty on the contractor breaching a duty).

In this case, conflicting evidence in the record creates a question of fact as to whether OneSource created or exacerbated a dangerous, wet condition on which DeAngelis slipped and fell. See Leone v. County of Monroe, 284 A.D.2d 975 (4th Dep't 2001) (whether a defendant created an allegedly dangerous condition by "negligently mopping" an area or failed to provide an adequate warning of the dangerous condition" is a triable issue of fact). OneSource's project manager, Gonzalo Beltran, testified that OneSource employees swept and mopped the staircases in American Airlines' terminal between 10:00 p.m. and 6:30 a.m. Although Beltran explained that they usually did so between 2:00 a.m. and 3:00 a.m., when the terminal was less crowded, he did not rule out the possibility that OneSource could have cleaned the staircase later in the morning. (See Beltran Dep. 9-10.) DeAngelis slipped and fell at approximately 6:40 a.m. Faruk Khan also testified that he observed two individuals mopping the floor a short distance from the staircase where DeAngelis fell. (See Khan Dep. 34.)

Given OneSource's cleaning schedule and responsibilities, a reasonable jury could find that the individuals Kahn observed were OneSource employees. A reasonable jury could also conclude that the two individuals Khan saw mopping nearby with a bucket also mopped where DeAngelis fell and created the accumulation of water on which she slipped. Cf. Spagnola v.

---

[3] Although this duty—not to negligently launch an instrument or force of harm—is characterized as an exception to the general proposition that a contractor does not owe a duty to third parties, it is perhaps better understood as a general duty that exists independent of any contract. The authority that the Court of Appeals cited in Espinal states that this duty exists "irrespective of a contract." See H.R. Moch Co. v. Rensselaer Water Co., 247 N.Y. 160, 167 (1928) (Cardozo, C.J.). The Court of Appeals also cited Restatement (Second) Torts (1965) § 324A(a) (Liability To Third Person For Negligent Performance Of Undertaking), which provides that a party may be liable for negligently rendering services that it undertakes for consideration or gratuitously.

Trump Taj Mahal, Inc., 261 A.D.2d 604 (2d Dep't 1999) (granting summary judgment when plaintiff did not submit evidence showing that individuals mopping in the vicinity were using wet mops, as opposed to dry mops).

Whether OneSource employees negligently created a dangerous condition on the staircase where DeAngelis fell also presents an issue of fact. Smith and Beltran both testified that OneSource employees generally posted warning signs if they left floors in a wet condition after cleaning them. Khan, however, testified that he observed no warning signs near the wet staircase or near the individuals he saw mopping. Although Defendants seek to undermine the weight that should be given to Khan's testimony by identifying inconsistencies, "[r]esolutions of credibility conflicts and choices between conflicting versions of the facts are matters for the jury, not for the court on summary judgment." United States v. Rem, 38 F.3d 634, 644 (2d Cir. 1994).

### D.    DeAngelis's Claim Against American Airlines

American Airlines owed a duty to DeAngelis based on its occupancy of the JFK terminal. Under New York law, owners and occupiers have a duty to maintain their "property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk." Basso v. Miller, 40 N.Y.2d 233, 241 (1976). An owner or occupier who opens his premises to the public has a "nondelegable duty to provide the public with a reasonably safe premises . . . ." Backiel v. Citibank, N.A., 299 A.D.2d 504, 505 (2d Dep't 2002). Although American Airlines owed a duty of care to DeAngelis, there is no genuine issue of material fact regarding whether American Airlines breached that duty of care.

In order for DeAngelis to show that American Airlines breached its duty of care, she must show that it had either actual or constructive knowledge of the condition that caused her

injury. See Gordon v. Am. Museum of Natural History, 67 N.Y.2d 836, 837-38. DeAngelis has submitted no evidence that American Airlines created or had actual notice of the condition that caused her accident, i.e., that its employees saw or heard about the wet staircase.

"To constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." Id. at 837. But a defendant is not charged with constructive notice when it merely has a "general awareness" that a dangerous condition may be present. Piacquadio v. Recine Realty Corp., 84 N.Y.2d 967, 969 (1994). Where a plaintiff fails to submit evidence that the dangerous condition was present for some time before the accident occurred, summary judgment is appropriate. See Gordon, 67 N.Y.2d at 838; see also Smith v. May Dept. Store, Co., 270 A.D.2d 870 (4th Dep't 2000) (granting summary judgment where there was no evidence that water was present on the floor prior to the plaintiff's fall); Eaton v. Pyramid Co., 216 A.D.2d 823, 824 (3d Dep't 1995) (same). A jury should not be allowed to conclude, based on "mere speculation," that a condition was visible and apparent for a sufficient length of time to be discovered and remedied. See Bluman v. Freeport Union Free Sch. Dist., 5 A.D.3d 341, 342 (2d Dep't 2004).

Even assuming that the dangerous, wet condition was visible and apparent on the subject staircase, DeAngelis has presented no evidence that the staircase was wet for any significant amount of time before her accident. To the contrary, DeAngelis testified that she walked the same route approximately ten minutes earlier and did not see any water on the steps at that time. (See Pl. Dep. at 64.) Accordingly, there is no genuine issue of material fact regarding American Airlines' liability for Plaintiff's accident. See MacKinney v. Burger King Corp., No. 05-CV-188 (DRH), 2006 WL 3501142, at *2 (E.D.N.Y. Dec. 4, 2006) (granting summary judgment where

11

plaintiff failed to produce evidence regarding length of time that dangerous condition was present); Heit v. Supermarkets General Corp., No. 93-CV-6871 (JFK), 1995 WL 559489, at *2-*3 (S.D.N.Y. Sept. 20, 1995) (same). Accordingly, Defendants' motion for summary judgment must be granted with respect to American Airlines.

## III.    CONCLUSION

For the forgoing reasons, Defendants' motion for summary judgment is GRANTED with respect to American Airlines and DENIED with respect to OneSource.

SO ORDERED.

s/ Nicholas G. Garaufis

Dated: Brooklyn, New York
     March 31, 2010

NICHOLAS G. GARAUFIS U
United States District Judge